UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CARLTON VOSE,
    Plaintiff,

v.

PAUL A. SUTTELL; MAUREEN M. GOLDBERG; WILLIAM P. ROBINSON, III; ERIN L. PRATA; and MELISSA A. LONG,
in their official capacities as Justices of the Rhode Island Supreme Court,
    and
PETER F. NERONHA, in his official capacity as Rhode Island Attorney General;
    and
JEANNE E. LaFAZIA, in her official capacity as Chief Judge, District Court of Rhode Island;
    Defendants.

Case No. _____

COMPLAINT FOR
DECLARATORY JUDGMENT

**COMPLAINT FOR DECLARATORY JUDGMENT**

Preliminary Statement

The controversy between the parties in these matters arose during the Plaintiff's application to the Rhode Island bar association from 2010 - 2014. It is the Plaintiff's belief that the Rhode Island Supreme Court's procedures regarding admission to the bar violate applicants' rights to due process guaranteed by the

1

Due Process Clause of the Fifth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment. The Plaintiff seeks a judgment to that effect.

The Rhode Island Supreme Court has demonstrated bias and prejudice against the Plaintiff, and the Plaintiff currently has a case pending before it. It is the Plaintiff's belief that evidence warrants disqualification of certain members of the Rhode Island Supreme Court from participating in further decisions involving the Plaintiff and that their refusal to recuse themselves is a violation of the Plaintiff's right to an impartial decision maker as guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment. The Plaintiff seeks a judgment to that effect.

The State of Rhode Island permits private prosecutions of misdemeanor crimes, that matter is not in dispute. The Plaintiff is seeking to prosecute certain individuals who have retaliated against the Plaintiff based on his disclosure of professional and criminal misconduct of Rhode Island Supreme Court employees during his bar application. It is the Plaintiff's belief that the Rhode Island Supreme Court, the Chief Judge of the state's district courts, and the Attorney General are improperly blocking the Plaintiff's private prosecutions with the intent to falsely imprison the Plaintiff in violation of his right to be free from unreasonable seizure

and false imprisonment guaranteed by the Fourth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment. The Plaintiff seeks a declaratory judgment to that effect.

## PARTIES

1. Plaintiff is a resident of the State of Florida.

2. Defendant Neronha is the attorney general for the State of Rhode Island, and is a resident of the State of Rhode Island.

3. Defendant LaFazia is the Chief Judge of the District Courts of the State of Rhode Island, and is a resident of the State of Rhode Island.

4. Defendants Suttell, Goldberg, Robinson, Prata, and Long are the current justices of the Rhode Island Supreme Court (hereafter "RISC"), and are residents of the State of Rhode Island.

## JURISDICTION and VENUE

5. Jurisdiction is proper in this court as the subject matter is federal constitutional rights under 42 U.S.C. §1983. The court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

6. This court has personal jurisdiction over the Defendants as they are all

residents of the State of Rhode Island, and/or all actions of the Defendants took place in the State of Rhode Island, and the Plaintiff seeks a judgment regarding his legal rights within the State of Rhode Island.

7. Based on the facts in paragraph six, venue is proper pursuant to 28 U.S.C. § 1391.

8. An actual controversy has arisen between the parties.

**Allegations Related to Bar Admission Procedures in Rhode Island**

9. The Plaintiff has passed the Rhode Island bar and intends to apply for admission to the Rhode Island bar.

10. The State of Rhode Island uses a Committee on Character and Fitness (hereafter "Committee") to evaluate all applications to the bar. The Committee has meetings with bar applicants before they make their recommendation. Applicants are not allowed to ask questions during those informal meetings with the Committee. Following the meetings, applicants are not told whether or not they have adequately addressed the Committees concerns, so they have no way of knowing if they should continue to provide evidence to the Committee.

11. Article II, Rule 4(D)(8) of the RI Supreme Court rules regarding admission to the bar states that if the Committee recommends that an applicant be denied admission to the bar, the applicant has two options: (a) withdraw the

application, or (b) have the Committee submit its recommendation of denial to the RISC, where the court has several options. Those options are listed in Article II, Rule 4(e) of the RI Supreme Court rules regarding admission to the bar. None of those options include giving the applicant a hearing at which the applicant can answer the reasons cited in the Committee's recommendation of denial. Nor do those options include giving the applicant the opportunity to confront and cross-examine those whose statements were a basis for the Committee recommending the denial of the application petition for admission to the bar.

12. The United States Supreme Court has stated that the requirements of procedural due process must be met before a State can exclude a person from practicing law; that procedural due process requires confrontation and cross-examination of those whose word deprives a person of his livelihood; and that bar applicants are clearly entitled to notice of, and a hearing on, the grounds for their rejection, either before a character and fitness committee, or before the state supreme court itself.

### Allegations Related to Lack of Impartiality of Defendants Suttell, Goldberg, and Robinson

13. During the Plaintiff's application to the bar, he made a disclosure of a personal conflict of interest he had with then-Attorney General Peter Kilmartin, who is automatically a member of the RI Supreme Court Committee per Article II,

Rule 3 (at the time of Plaintiff's bar application; the current rule is Rule 4). The disclosure was made off the record to avoid embarrassment for the people involved.

14. The Plaintiff disclosed that then-Attorney General Kilmartin had "flirted" with a woman that he had dated; that the woman was "not bothered" by his advances, and that she was a "friend" of Mr. Kilmartin and his wife; and the Plaintiff stated twice that there was "nothing serious" about Mr. Kilmartin's behavior. The Plaintiff noted however that he had confronted Mr. Kilmartin about his behavior, and told him that he was making a fool of himself, therefore he did not think it was appropriate for Mr. Kilmartin to be involved in the decision regarding his application to the bar.

15. Because the Plaintiff's disclosure was made off the record, it does not appear in a transcript. With knowledge that there was no written record of the disclosure, the Committee saw it as an opportunity to assassinate the Plaintiff's character. The Committee lied to the 2014 RI Supreme Court[1] and stated that the Plaintiff said that Mr. Kilmartin was stalking the woman; that Mr. Kilmartin was harassing the woman; that Mr. Kilmartin placed the woman in fear of bodily

---

[1] All references to misconduct by the Rhode Island Supreme Court during his bar application apply to the court as it existed in 2014: Justices Suttell, Goldberg, Robinson, Indeglia, and Flaherty. Current Justices Prata and Long were not on the court at that time and have nothing to do with the misconduct described herein.

6

injury; that Mr. Kilmartin broke into her house; and that the Plaintiff tried to extort the Committee by threatening to disclose the information if he was not admitted to the bar.

16. The Committee then forwarded their false accusations to the 2014 RI Supreme Court and stated that the Plaintiff's "very serious accusations" were "singularly disqualifying for admission to the bar." The recommendation was authored by Providence attorney Patricia K. Rocha, who is a partner at the law firm of Adler Pollack & Sheehan. Another partner at that firm is R. Bart Totten, who is the childhood friend of Defendant Attorney General Peter Neronha who is prosecuting the Plaintiff. Defendant Neronha also recommended Mr. Totten for a position as a Rhode Island judge.

17. The 2014 RI Supreme Court and Committee decided to contact the Rhode Island State Police and attempted to have the Plaintiff arrested for extortion.

18. Upon learning that the 2014 RI Supreme Court had contacted the police, the Plaintiff also contacted the police, and advised them that he had recorded his disclosure. The Plaintiff played the recording for the state police, and they agreed that the Committee was lying and that the Plaintiff had made no statements that could reasonably be interpreted in the manner that the Committee suggested. The state police stated that this was a civil matter between the Plaintiff and Mr. Kilmartin and they declined to get involved or write a report.

19. RISC Rules, Article II, Rule 3(j) of the rules regarding admission to the bar, as they existed when the Plaintiff applied to the bar on May 14, 2010, stated that the Plaintiff was entitled to a hearing to address the Committee's accusations.

20. The Plaintiff requested the hearing to which was entitled by Rule 3, so that he could present evidence of perjury and fraud by the Committee, but the 2014 RI Supreme Court refused to grant him the hearing.

21. The 2014 RI Supreme Court then changed its rules to eliminate all future applicants' rights to a hearing. Upon information and belief, the 2014 RI Supreme Court changed their rules with the intent to save the careers of their friends and coworkers, and to cover up their professional and criminal misconduct.

22. The Plaintiff's bar application spanned an incredible four and a half years, from May 2010 until September 2014. The members of the Committee included: Peter Kilmartin (then-attorney general), Gerald J. Coyne (then-deputy attorney general), Patricia K. Rocha (chairperson), Debra Saunders (RISC Clerk) Peter DiBiase, Lise Iwon, Michael Ursillo, William J. Conley, Suzanne Augenstein, and Maria Gonsalves. RISC Disciplinary Counsel Barbara Margolis was also present at all meetings and signed a memorandum endorsing the Committee's accusations.

23. The Plaintiff asked the 2014 RI Supreme Court to investigate the professional and criminal misconduct of their friends and coworkers, but they refused. The Plaintiff initiated his own complaints against the Committee members, however his complaints were blocked by the 2014 RI Supreme Court who falsely advised their Disciplinary Board that they had already investigated the matter. Neither the Plaintiff nor his witnesses have ever been contacted by the RI Supreme Court regarding these matters.

24. The 2014 RI Supreme Court issued its en banc opinion, authored by Defendant Goldberg, on June 20, 2014 in case no. SU-13-0354-MP. The Plaintiff submitted a timely motion to reargue, which was denied by the 2014 RI Supreme Court on September 10, 2014, bringing the Plaintiff's bar application to a close.

25. In its opinion, the 2014 RI Supreme Court knowingly made numerous statements that were false, erroneous, or defective in important particulars; and the court spoke in half-truths and omitted relevant facts such that their opinion was defective in very important particulars and which was intended to deceive the State of Rhode Island.

26. Prior to being elected attorney general, Peter Kilmartin was a police officer in the City of Pawtucket for 24 years. Following the Plaintiff's application to the bar, the Plaintiff was arrested four times by Peter Kilmartin's former police department. One of those cases is currently before the RISC: Case No. SU-2020-

274-C.A. The Plaintiff submitted a motion to disqualify the members of the 2014 RISC from participating in that case, however they refused to recuse themselves.

27. Following the Plaintiff's arrest, then-Attorney General Peter Kilmartin, then-Deputy Attorney General Gerald Coyne, and former Committee chairperson Patricia K. Rocha conspired with the other defendants in case no 1:19-cv-409 to falsely imprison the Plaintiff. Towards that end, they needed a victim, so they kidnapped the Plaintiff's mother and murdered her.

28. The Plaintiff attempted to report the kidnapping of his mother however neither the Pawtucket police department, nor the Rhode Island State Police would take a report from the Plaintiff.

29. The Plaintiff submitted professional misconduct complaints to the RISC Disciplinary Counsel regarding the kidnapping of his mother, but the Rhode Island Supreme Court blocked the investigations.

### Allegations Related to
### Attorney General's Obstruction of Plaintiff's Private Prosecutions

30. The State of Rhode Island permits private prosecutions of misdemeanor cases, that matter is not in dispute.

31. The procedure for initiating a private complaint is provided in RI Gen L § 12-4-2 (2022) which states that a complainant need only provide fifty dollars

and assurance to prosecute the complaint with effect and the judge shall issue a warrant.

32. On May 17, 2022, the Plaintiff appeared before Judge DuBose in Providence District Court. He presented fifty dollars and provided assurances to Judge DuBose at which time she issued a warrant for police officer William McCaughey in case no. 61-2022-04550. No approval was required by the chief judge of the district courts.

33. The RISC has stated that the attorney general has the authority to intervene or dismiss private prosecutions, subject to constitutional and ethical limitations.

34. The person that the Plaintiff is attempting to prosecute, police officer William McCaughey, is the police officer who provided Defendant Neronha with the affidavit that is the basis for Defendant Neronha's prosecution of the Plaintiff for "obtaining money by false pretenses."

35. The affidavit provided by officer McCaughey contains statements that he knows are false, erroneous, and/or defective in important particulars, and he knowingly submitted that affidavit with the intent to deceive all who would read it, including his employer, the judicial officer who would read it, the City of Pawtucket where he works, and the State of Rhode Island.

36. The Plaintiff charged police officer McCaughey with misdemeanor fraud pursuant to RI Gen L 11-18-1 (2017) and also included allegations of perjury by officer McCaughey. The criminal complaint further alleges conspiracy and collusion between officer McCaughey and the prosecutor with whom he was working – Suzette Pintard. The criminal complaint further alleges subornation of perjury by the attorney general's office.

37. The state district court directed officer McCaughey to appear before it to answer charges of fraud on June 15, 2022. On that date, Defendant Neronha (by and through his representative, prosecutor Stephen G. Dambruch) represented Mr. McCaughey, and dismissed the complaint before it could reach the neutral judge who was standing right in front of him, notwithstanding the constitutional and ethical considerations that are apparent in doing so.

38. The attorney general's office stated that the reason for the dismissal was the lack of "credible" evidence. The Plaintiff's evidence is the same evidence being offered by Defendant Neronha against the Plaintiff. At the time the attorney general's office made that statement, discovery had obviously not even taken place yet, so the attorney general could not have known what other evidence the Plaintiff had.

**Allegations Related to RISC Obstruction of Plaintiff's Private Prosecutions**

39. On October 14, 2022, in order to extend the courtesy of avoiding having arrest warrants issued for three members of the RISC, the Plaintiff served Defendants Suttell, Goldberg, and Robinson (in addition to retired Justices Gilbert Indeglia and Francis Flaherty), with summonses to appear in state district court on November 4, 2022 to answer charges of criminal fraud.

40. On October 31, 2022, the Plaintiff went to the state district court in Providence to open criminal complaints against Defendants Suttell, Goldberg, and Robinson (as well as retired Justices Indeglia and Flaherty, and police officer Christopher Dupont). The Plaintiff presented fifty dollars and provided assurance to the duty judge that he would prosecute the complaints with effect. The district court personnel refused to accept his complaints. District Court personnel advised the Plaintiff that "new rules" required that the chief judge of the district courts, who is currently Defendant LaFazia, approve all private complaints. The Plaintiff asked where this new rule was located and he was advised that it was not a formal rule that was written anywhere, as it was just enacted.

41. All new rules enacted by the district court must be approved by the state supreme court. All new rules approved by the state supreme court must be posted with the secretary of state. No such rule has been posted with the secretary of state.

42. Upon information and belief, the RISC, upon receiving their summonses to appear in court, contacted Defendant LaFazia and directed her not to accept the Plaintiff's complaints. As noted in paragraph 32 hereinabove, no such approval by Defendant LaFazia was required on May 17, 2022. It is not a coincidence that this new rule appeared only after the RISC was charged with crimes.

43. Plaintiff attempted to get approval from Defendant LaFazia, but the Plaintiff was told that she was not available. The Plaintiff followed the rules but he was denied access to the courts.

## CLAIMS FOR RELIEF

## CLAIM ONE

**(Declaratory Judgment of Noncompliance with
Due Process Requirements, 42 U.S.C. § 1983)**

44. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40, inclusive.

45. The Plaintiff has passed the Rhode Island bar exam and intends to apply for admission to the Rhode Island bar. States cannot deny bar applicants admission to the bar in a manner that does not comply with due process requirements. RISC rules regarding admission to the bar do not comply with due

process requirements in bar admission proceedings under the Fifth Amendment to the U.S. Constitution, applicable to the states via the Fourteenth Amendment.

46. An actual, present and justiciable controversy has arisen between Plaintiff and the RISC concerning the constitutionality of their rules regarding admission to the bar.

47. Plaintiff seeks a declaratory judgment that RISC rules regarding admission to the bar do not comply with due process requirements pursuant to the Fifth Amendment to the U.S. Constitution, applicable to the states via the Fourteenth Amendment.

## CLAIM TWO

**(Declaratory Judgment of Noncompliance with
Due Process Requirements, 42 U.S.C. § 1983)**

48. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40, inclusive.

49. Plaintiff currently has a case pending before the RISC, Case No. SU-2020-274-C.A. The RISC has demonstrated extreme bias and prejudice towards the Plaintiff, and in favor of the attorney general's office, which is documented in the court's opinion in case no SU-13-0354-MP, and in the Plaintiff's motion to disqualify submitted in that case on October 24, 2022. The RISC has previously attempted to have the Plaintiff falsely arrested for extortion.

50. An actual, present and justiciable controversy has arisen between Plaintiff and RI Supreme Court Justices Suttell, Goldberg, and Robinson concerning the impartiality of those justices in matters related to the Plaintiff.

51. Plaintiff seeks a declaratory judgment that the participation of Justices Suttell, Goldberg, and / or Robinson in any matters related to Plaintiff are in violation of Plaintiff's right to an impartial decision maker pursuant to the Due Process Clause of the Fifth Amendment to the U.S. Constitution, applicable to the states via the Fourteenth Amendment.

## CLAIM THREE

### (Declaratory Judgment of Infringement Upon Right to be Free From Unreasonable Seizure, 42 U.S.C. § 1983)

52. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40, inclusive.

53. Plaintiff has attempted to exercise his right to pursue a private prosecution of police officer William McCaughey. William McCaughey is conspiring with Defendant Neronha to enter fraudulent evidence and perjured testimony into court proceedings for the malicious purpose of falsely imprisoning the Plaintiff. Plaintiff is attempting to prevent his false imprisonment by exposing the criminal conduct of police officer McCaughey and the prosecutor who suborned his perjury, Suzette Pintard. Defendant Neronha is misusing his position

of public trust to shield his office from civil and criminal liability by dismissing the Plaintiff's private prosecutions. Defendant Neronha is further misusing his office to shield his childhood friend's law firm – Adler Pollack & Sheehan, from civil liability in another case in this court's calendar, namely 1:19-cv-409.

54. An actual, present and justiciable controversy has arisen between Plaintiff and Defendant Neronha regarding the misuse of Defendant Neronha's discretionary authority to intervene or dismiss Plaintiff's private prosecutions.

55. Plaintiff seeks a declaratory judgment that Defendant Neronha's intervention or dismissal of Plaintiff's private prosecutions of any Defendants in this case, or in case no. 1:19-cv-409, are unethical, and are an unconstitutional infringement upon the Plaintiff's right to be free from unreasonable seizure and false imprisonment pursuant to the Fourth Amendment of the U.S. Constitution, applicable to the states via the Fourteenth Amendment.

## CLAIM FOUR

**(Declaratory Judgment of Violation of
Plaintiff's Right to Equal Protection, 42 U.S.C. §1983)**

56. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40, inclusive.

57. Plaintiff has attempted to access the state courts of Rhode Island in accordance with state law, however the RISC Defendants and Defendant LaFazia have blocked his access by creating an arbitrary, unwritten rule that allows

Defendant LaFazia to pick and choose which people get to use the courts to seek justice, and which defendants are shielded from being held responsible for their crimes.

58. An actual, present and justiciable controversy has arisen between Plaintiff and Defendants Suttell, Goldberg, Robinson, Prata, Long, and LaFazia regarding access to the courts.

59. Plaintiff seeks a declaratory judgment that the arbitrary rule giving Defendant LaFazia unfettered discretion regarding who gets access to the courts is a violation of the Plaintiff's right to equal protection guaranteed by the Due Process Clause of the Fifth Amendment to the U.S. Constitution, applicable to the states via the Fourteenth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

60. Enter judgment according to the declaratory relief sought;

61. Award Plaintiff his costs in this action.

62. Enter such other further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

63. Plaintiff requests that the Court refer the actions of these Defendants to the United States Attorneys Office for investigation of federal criminal RICO

violations based on obstruction of the Plaintiff as lead attorney / officer of the court in Case No. 1:19-cv-409; as well as for investigation of criminal willful deprivations of constitutional rights pursuant to 18 U.S.C. § 242.

64.    Plaintiff further requests that, pursuant to LR Gen 210, the Court initiate disciplinary proceedings against the 2014 Rhode Island Supreme Court Justices: Paul Suttell, Maureen Goldberg, William Robinson III, Gilbert Indeglia, and Francis Flaherty. Furthermore, the Plaintiff requests that, pursuant to LR Gen 210(b)(2), the Court appoint special counsel to investigate the conduct of the named members. Additionally, because no state agencies would write a police report in response to the kidnapping of the Plaintiff's mother, the Plaintiff requests that the Court refer that matter to the Federal Bureau of Investigation (the Plaintiff's mother was taken from Rhode Island and into Massachusetts) and the United States Attorneys Office for investigation.

Respectfully submitted: 01/26/2023

Plaintiff, Pro Se

/s/ Carlton Vose
Carlton Vose, Pro Se
Mass BBO #680548
220 Colonel Ledyard Hwy
Mystic, CT 06355
carltonvose@gmail.com
904-755-4641